JEREMY R. MORRIS
*Attorney at Law*
Idaho Bar No. 8500
PO Box 1296
Hayden, ID 83835
Tel: (208) 964-5878
j.morris@libertyconsulting.us

Attorney for Plaintiffs,

# U.S. DISTRICT COURT

# DISTRICT OF IDAHO

| | |
|---|---|
| Jeff Tyler, Brigadier Gen. Bob Brooke, Kootenai County Republican Central Committee,<br><br>Plaintiffs,<br><br>v.<br><br>Coeur d'Alene School District #271<br><br>Defendant. | Civil No.<br><br>**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR DECLARATORY JUDGMENT & DAMAGES** |

## VERIFIED COMPLAINT FOR DECLARATORY JUDGMENT AND DAMAGES

**[**This COMPLAINT is filed concurrently with a MOTION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF.**]**

COMES NOW, the Plaintiffs, Jeff Tyler, Brigadier General Bob Brooke, and Kootenai County Republican Central Committee, (hereinafter, "KCRCC") and pursuant to Idaho Code §18-2318, the First Amendment of the United States Constitution, the Equal Protection Clause, and Article I, §2, §9, and §10 of the Idaho State Constitution, hereby files this request for declaratory judgment, compensatory damages and preliminary and permanent injunctive relief

visa vie motion (filed concurrent to this Original Complaint) against Defendant, Coeur d'Alene School District #271, (hereinafter, "District #271"). Plaintiffs, by and through their undersigned counsel, allege, and aver as follows:

## I. INTRODUCTION

1. Idaho Code §18-2318 plainly states that "no person may, within a polling place, or any building in which an election is being held, or within one hundred (100) feet thereof: (a) Do any electioneering; (b) Circulate cards or handbills of any kind." The restriction on electioneering ENDS 100 feet from the BUILDING that contains the polling place. Elected Republican Precinct Committeemen legally distributing flyers 101 feet from buildings were forcibly ejected from school property by law enforcement at the direction of the Coeur d'Alene School District. One such person was Brigadier Gen. Bob Brooke who was at Hayden Meadows, alone, holding a stack of sample ballots close to the road. Mr. Brooke is one of the Plaintiffs.

2. Plaintiffs disagree with Defendant that a "polling place" is the entire <u>grounds</u> or property boundary of a school. Plaintiffs request that this Court outline the rights of the parties under Idaho Code §18-2318. The Defendant applied a different definition to §18-2318 in which the required electioneering distance from a polling place was not "100 feet from the building" but rather, 100 feet from the property line." The Defendant argues that as a limited public forum, it controls the school property and therefore prohibits all political speech at all times. The Defendant further seeks to institute a novel definition of "polling place" and not the plain meaning generally understood to be, "the place where a person votes." i.e. Not the football field, the playground, or the work shed where the lawnmower is kept.

3. In asserting its "no political speech policy," (hereinafter, "The Policy"), the Defendant unwittingly opened itself up to a Viewpoint Discrimination Claim for which we also

bring this Complaint. Even if the Court were to agree with the Defendant that the Defendant can keep electioneering 100 feet back from its property line and thereby subject any individual living adjacent to any football field in the district and displaying a campaign sign on their lawn or window sticker to a fine of $1,000 or arrest, The Policy in which District #271 claims neutrality is false. Plaintiffs have signed affidavits attached to the Motion for Preliminary and Permanent Injunction filed with this Complaint, citing multiple examples, over several years, in which the Defendant provided access to left-wing organizations for purposes of voter registration and the backing of partisan causes and candidates.

4. For more than 5 years, organizations and individuals promoting the democrat party at District #271 schools were given red-carpet treatment, while KCRCC and its affiliates were barred. In 2020, the Kootenai County Women's Republican Federated were told that because of COVID, the District didn't want the KCWRF to distribute copies of the US Constitution, but no provision was even made for them to be dropped off. When Democrats from North Idaho College were permitted to speak, Republicans were not. KCRCC has met resistance at every turn. The District has ignored KCRCC's demonstration that unequal access to District facilities is a violation of entrenched law, and demonstrated hostility to KCRCC by having sheriff's deputies remove its members from public property under the pretext of a security threat. Because of the District's unconstitutional and unconscionable actions, students in the District have been indoctrinated into a partisan ideology, protected by The Policy which is intended to appear neutral, but in practice is actually designed to prefer certain types of people over others. Based on the unconstitutional application of The Policy as it relates to Free Speech and the aggressive years-long effort to engage in viewpoint discrimination, KCRCC has been stripped of its First Amendment rights and silenced in its efforts to provide its beneficial pro-American views to

countless students in the District.  The Plaintiffs have been silenced from providing information to voters on election day and from distributing the same sample ballots that are provided to voters in other precincts not located on District #271 properties.  The District's actions and intentional inactions have therefore caused irreparable injury to KCRCCs cherished constitutional rights.

5. In this action, under I.C. §18-2318, KCRCC seeks a declaratory judgment as to the rights of the parties and injunctive relief against the District, their agents, servants, departments, divisions, employees and those acting in concert and with actual notice, enjoining them from enforcing The Policy.  The Plaintiffs further seek actual damages for the humiliation and embarrassment of Retired Brigadier Gen. Bob Brooke and the cost of wasted campaign resources in the November 3, 2020 election.  Plaintiffs further seek exemplary damages of $17,760 both as to the intentional violation of the plain meaning of I.C. §18-2318 and as a public rebuke for blatant Viewpoint Discrimination for which the Defendant knowingly made false statements regarding a policy that favored some groups over others.

6. An actual controversy exists between the parties involving substantial constitutional issues, in that the District's policies, both facially and as applied, violate the Free Speech Clause, and the Equal Protection Clause of the First and Fourteenth Amendments to the United States Constitution.

## II. JURISDICTION and VENUE

7. This action arises under the First and Fourteenth Amendments to the United States Constitution.

8. This Court has jurisdiction of this claim under 28 U.S.C. §§1331, 2201-02.

9. This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including reasonable attorneys' fees, under 42 U.S.C. §1988.

10. This Court is authorized to grant Declaratory Judgment under the Declaratory Judgment Act, 28 U.S.C. §§2201-02 implemented through Federal Rule of Civil Procedure 57, and to issue the Preliminary and Permanent Injunctive Relief requested by Plaintiff under Federal Rule of Civil Procedure 65.

11. Venue is proper under 28 U.S.C. §1391 (b). Each and all of the acts alleged herein were done by Defendant under the color and pretense of the statutes, ordinances, regulations, customs, and uses of the School Property and other county facilities.

## III. THE PARTIES

12. KCRCC is a non-profit organization incorporated under the laws of the state of Idaho with its principal place of business the Kootenai County Administration Building. Retired General Bob Brooke resides at 2933 East Point Hayden Drive, Hayden Lake, Idaho 83835. Jeff Tyler's place of domicile is 5892 W. Harbor Drive, Coeur d'Alene, Idaho 83814. At all relevant times to this Complaint, Plaintiffs have resided in Kootenai County, Idaho.

13. At all relevant times to this petition, Defendant Coeur d'Alene School District 271 was located at 1400 N. Northwood Center Ct., Coeur d'Alene, Idaho 83814.

14. Dean Keck, safety and security administrator is an agent of the district and vested with the authority to make decisions and he used his authority to undertake actions inconsistent with state law and federal law.

15. Each and all of the acts alleged herein were done by Defendants' application of the statutes, ordinances, regulations, customs, policies, procedures, and laws of the State of Idaho.

## IV. STATEMENT OF FACTS

16. On Election Day, November 3, 2020, Jeff Tyler, elected Precinct Committeeman charged with overseeing election day Get Out the Vote (GOTV) efforts by the Republican Party Central Committee was informed by Brigadier Gen. Bob Brooke that Mr. Brooke had been turned away from a polling location where Mr. Brooke was engaging in <u>legal</u> electioneering practices 100+ feet away from the building of a polling place at a Hayden Meadows Elementary School.

17. Pursuant to General Brooke's affidavit, Gen. Brooke encountered law enforcement who were directed by Dean Keck, a director and employee of the Coeur d'Alene School District #271 to have anyone on school properties across the county engaging in handing out sample ballots to be removed from the property. [*Brooke Affidavit*, Motion for Injunction].

18. Deputy Franssen of the Kootenai County Sheriff's Department told Gen. Brooke that if the school district allowed campaign activity on school property in excess of 100 feet of the building, that "Antifa would be permitted to do the same."

19. Antifa has been designated a terrorist organization and the Republican Party has not. Per Attorney General William Barr's press release on May 31, 2020, "The violence

instigated and carried out by Antifa and other similar groups in connection with the rioting is domestic terrorism and will be treated accordingly."

20. When Gen. Brooke arrived to hand out sample ballots, he entered Hayden Meadows Elementary and was guided by a poll worker to look at a map where Mr. Brooke could legally stand. That map was created by the Kootenai County Clerk's office which is in charge of elections.

21. The poll worker who directed Gen. Brooke was following the rulebook promulgated by the Clerk's Office: "How far away do people need to be from the building if they are electioneering? Electioneering is not allowed within 100 feet of the <u>building</u> where voting is taking place. Check the surroundings of your Polling Place and make sure there are no signs within that distance. Be sure to use your electioneering map." Kootenai County Clerk's Poll Worker Training Questions, page 3, Par. 3. (Exhibit 1).

22. In numerous statements by Defendant, retired Brigadier General Bob Brooke was publicly referred to as a safety concern for students at Hayden Meadows Elementary School (alone, no megaphone, no large signs, near the road, holding sample ballots).

23. Subsequent to the claims by District 271 that <u>all persons</u> are prohibited from engaging in campaign activities on school properties and that schools can eject anyone they wish as they administer the public facilities; many members of the public, including one former District 271 Board Member came forward with examples of viewpoint discrimination.

24. Churches in Kootenai County have said they do not have policies restricting political speech near their polling places on election day, creating an equal protection issue.

25. In their effort to redefine "polling place" under I.C. §18-2318, the Defendant claims that <u>no person</u> is permitted to engage in political speech on school properties at any time.

26. Defendant claims no political speech is permitted as a justification for throwing Republicans off school property. Terri Seymour, a District #271 former <u>Board Member</u> states in an affidavit attached to the accompanying Motion for Preliminary and Permanent Injunction, that in one case, Christy Milan, President of the Coeur d'Alene teacher's union at Woodland Middle School, used her car as a portable campaign sign. Ms. Seymour asked Hazel Bauman, Coeur d'Alene Superintendent of the school district to have the signs removed and they were not. In another case cited by Ms. Seymour, a table was set up directly outside the door of Lake City High School with signs for 18-year-olds to register and vote as part of an open effort to vote against Raul Labrador who was then running for Governor. [*Seymour Affidavit*, Motion for Preliminary and Permanent Injunction].

27. On January 8, 2016, a social studies lesson at one school included having the students instructed to "put on turbans" that were distributed by the Muslim boyfriend of one teacher.

28. In September 2017, when a parent asked if a priest would be permitted to distribute crosses as part of western cultural awareness, the parent was told that it would not be permitted. When the parent asked if the Principal could explain the difference between children being instructed to wear turbans versus children being asked to wear crosses, the principal of Hayden Meadows said, "crosses would be different."

29. In 2016, a 10th Grade English teacher at Coeur d'Alene High School told students, "If your parents vote for Trump, then all the Muslims in the US will end up in internment camps!"

30. In 2019, when a parent asked why the Christmas program was being referred to as a "Holiday Program", the parent was informed that while it was technically a Christmas Program,

they would not refer to it as a Christmas program because Christmas could be offensive. When asked if there was a similar concern about Halloween being offensive to Christians and if other names like "Scary October Days" might be used instead, the parent received no response. The Seven Principles of the Marxist Symbionese Liberation Army were sung from the stage during the same non-Christmas program against the wishes of the Christian parent.

31. District #271 admitted to Jeff Tyler, KCRCC precinct committeeman that in fact, on multiple occasions, a self-described "progressive" group called Reclaim Idaho was permitted to have tables and gather signatures for a ballot initiative to increase Medicaid spending at the entrance to Woodland Middle School.

32. District #271 has stated they will continue to prevent elected representatives of KCRCC from distributing sample ballots more than 100 feet from school buildings, and specifically noted a desire to keep KCRCC off properties for the upcoming School Levy increase for $20 million dollars.

## V. CAUSES OF ACTION

### COUNT I.

### Violation of I.C. 18-2318

CAMPAIGN WORKERS, HEREINAFTER, "ELECTIONEERS" STANDING 101 FEET FROM ANY POLLING PLACE BUILDING WERE HARASSED BY LAW ENFORCEMENT UNDER THE GUISE OF A POLICY THAT'S NOT EQUALLY APPLIED.

33. Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 32.

34. I.C. 18-2318
(1) On the day of any primary, general, or special election, no person may, within a polling place or any building in which an election is being held, or within in one hundred (100) feet thereof:
   (a) Do any electioneering

      (b) Circulate cards or handbills of any kind
      (c) Solicit signatures to any kind of petition; or
      (d) Engage in any practice which interferes with the freedom of voters to exercise their franchise or disrupts the administration of the polling place.
(2) No person may obstruct the doors or entries to a building in which a polling place is located or prevent free access to and from any polling place.

35. Based upon the plain meaning of I.C. 18-2318, the restriction on electioneering efforts "within a polling place or any building... or within 100 feet thereof,"  The polling place is most clearly the room or area within the <u>building</u> and not the entire property.  From the <u>building</u> is precisely how the Secretary of State has interpreted "polling place" for time immemorial.

36. District #271 knew they were violating the statute because maps were posted on the walls of polling places within their schools across the county.  Those maps clearly designated where electioneering could take place.

37. The Secretary of State of Idaho is designated with the task of running elections and they oversee the clerks within those counties.  The maps and guidebooks designating "100 feet from the <u>building</u>" originate from the Secretary of State's authority through its county clerks who are tasked with implementing I.C. 18-2318.

38. While school administrators operate a limited public forum,

    a. Defendant effectively has little authority over that property when the school hosts an election.  State law is superior to the Defendants traditional control over its property.

    b. To the extent that Defendant does retain any control over its grounds (away from polling locations) on election day under the statute, the Defendant has forfeited those rights by making the forum public by inviting left-wing groups to engage in campaign activities.

39. Many KCRCC elected precinct committeemen have already suffered harm by harassment and humiliation, whether intentional or through a misunderstanding of I.C. 18-2318.

40. We ask this Court to support the position that EVEN IF the Plaintiffs were on private property, when an entity, organization, business, or other public or private enterprise AGREES to have a polling place at their location, Americans can engage in protected political speech 100+ feet from the polling "building." When an entity consents to allow a polling place at their location, they are then governed by I.C. 18-2318 and cannot declare their business policy prevent protected speech and thereby create a glaring equal protection problem for voters in other precincts.

41. If the Defendant is permitted to deter the exercise of First Amendment rights on election day on the basis that somehow no one knew the meaning of "polling place" until now, the result will be that entire neighborhoods will be prohibited from displaying signs at their homes. The Defendant will assert its "facilities" are synonymous with "polling places." But that will pose a significant problem. The District also refers to its <u>buses</u> as facilities. A parade of horribles will ensue with roaming, mobile no-speech zones near every bus stop. And this doesn't even begin to encapsulate the problem of many hundreds of homes located within 100 feet of football fields, playgrounds, and school buses (all "facilities"). Recognizing "polling place" as a synonym to "school facilities" is a veritable roller coaster ride into Reductio ad absurdum.

42. The Policy, both on its face and as-applied, unconstitutionally chill and abridge KCRCCs right to engage in free speech guaranteed by the First Amendment.

43. The Policy, both on its face and as-applied, unconstitutionally chill and abridge KCRCCs right to petition the government for a redress of grievances.

44. The Policy, both on its face and as-applied, unconstitutionally chill and abridge KCRCCs right to assembly.

45. The Policy, both on its face and as-applied, unconstitutionally chill and abridge KCRCCs right to fully participate in all facets surrounding the fundamental right to vote, including, the right to inform other voters.

46. Damages alone are not an adequate remedy to correct the continuing deprivation of its most cherished constitutional liberties.

47. As a direct and proximate result of the District's continuing violations of KCRCCs rights, KCRCC has suffered, is suffering, and will continue to suffer immediate and irreparable harm, including but not limited to, the loss of its ability to exercise its constitutional rights.

## COUNT II.

### Violation of the Right to Equal Protection

48. Plaintiffs hereby incorporate and adopt each and every allegation in the preceding paragraphs numbered 1 through 47.

49. Plaintiffs' right to equal protection under the laws is protected by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

50. Defendant's Policies and actions are unconstitutional abridgements of Plaintiffs' affirmative right to equal protection of the laws, are not facially neutral, and specifically target Plaintiffs' viewpoints and speech.

51. Defendant's Policies and actions are unconstitutional because they treat Conservative groups differently than they treat Liberal groups.

52. Defendant's Policies and actions are unconstitutional abridgments of Plaintiffs' right to equal protection of the law because Defendants treat Plaintiffs differently from other similarly situated individuals and groups on the basis of Plaintiffs' ideological content, viewpoint, and expression.

53. Defendant's Policies and Actions with respect to their disregard for I.C. 18-2318 has already violated the equal protection of voters because voters in some precincts have access to sample ballots, but voters casting a vote at District #271 do not. In *Bush v. Gore*, Bush argued that recounts in Florida violated the Equal Protection Clause because Florida did not have a statewide vote recount standard. *Bush v. Gore*, 531 U.S. 98 (2000). Here, some precincts have one standard widely recognized under the verbiage of "100 feet from the building" as written by the Secretary of State, while precincts with polling places operated at District #271 are under a different standard.

54. Defendants' Policies and actions are not supported by a compelling governmental interest sufficient to justify its enactment or enforcement against Plaintiffs.

55. Defendant's Policies and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the actions.

56. Defendant's Policies and actions do not serve a significant government interest.

57. Defendant's Policies and actions are irrational and unreasonable, and impose irrational and unjustifiable restrictions on constitutionally protected speech.

58. As a direct and proximate result of Defendants continuing violations of Plaintiffs' rights, Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including, but not limited to, the loss of their ability to exercise their constitutional rights.

# COUNT III.

**VOLATION OF FREEDOM OF SPEECH UNDER THE FIRST AMENDMENT
TO THE UNITED STATES CONSTITUTION AND VIEWPOINT DISCRIMINATION**

**Viewpoint Discrimination**

59. Plaintiff hereby reincorporates and adopts each and every allegation in the preceding paragraphs numbered 1 through 58.

60. The Free Speech Clause of the First Amendment to the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, prohibits the District from abridging KCRCC's freedom of speech.

61. The Policy, both on its face and as-applied, constitute an unconstitutional abridgement of KCRCCs freedom of speech.

62. In <u>RAV v. City of St. Paul</u>, the U.S. Supreme Court referred to Justice Holmes's argument that the free speech clause ensures a marketplace of ideas that can compete for acceptance by citizens seeking the truth. The Court noted that the government may improperly try to use content or viewpoint discrimination to drive certain ideas out of the marketplace. The Government has no authority to "license one side of a debate to fight freestyle, while requiring the other to follow the Marquis of Queensbury Rules." <u>RAV v. City of St. Paul</u>, 505 US 377 (1992). In this case, CDA School District, under the explicit direction of Dean Keck has, it would seem, attempted to use law enforcement to drive certain ideas out of the marketplace.

63. Defendant violated Plaintiff's First Amendment right to freedom of speech by refusing to allow them on properties when representatives from the Young Democrats at North Idaho College were provided that same forum.

64. Defendant violated Plaintiff's First Amendment right to freedom of speech by refusing to allow them on properties where voting was taking place in which some members of KCRCC wished to distribute sample ballots at or beyond the 100-foot boundary.

65. Defendant violated Plaintiff's First Amendment right to freedom of speech by refusing to allow them on properties where voting was taking place by invoking "safety" as a knowingly-false pretext.

66. Defendant violated Plaintiff's First Amendment right to freedom of speech by drafting, The Policy, which, as designed and implemented, targeted Republicans, but not Democrats.

67. Defendant's Policies and actions are a prior restraint on Plaintiff's speech.

68. Defendant's Policies and actions grant individual teachers, principals, and other District #271 employees with unfettered discretion to deny conservatives the same right to peaceably assemble and exercise free speech, which has already been provided to liberals.

69. Defendant's Policies and actions are vague.

70. Defendant's Policies and actions are content-based restrictions on Plaintiff's speech.

71. Defendant has denied Plaintiff the right to freedom of speech by discriminating against Plaintiffs on the basis of the content of their message.

72. Defendant's Policies and actions are viewpoint-based restrictions on Plaintiff's speech.

73. Defendant has denied Plaintiff the right to freedom of speech by discriminating against Plaintiffs on the basis of the religious viewpoint of their speech.

74. Defendant's Policies and actions are not the least restrictive means to accomplish any permissible government purpose sought to be served by the actions.

75. Defendant's Policies and actions do not leave open ample alternative forums for Plaintiffs to communicate their message.

76. Defendant's Policies and actions are irrational and unreasonable, and impose unjustifiable restrictions on constitutionally-protected speech.

77. Defendant's Policies and actions unconstitutionally chill and abridge the right of Plaintiffs to freely speak and meet with other people.

78. Defendant's violation of Plaintiffs' right of free speech has caused, and will continue to cause, the Plaintiffs to suffer undue and actual hardship and irreparable injury.

79. As a direct and proximate result of the Defendant's continuing violations of the Plaintiffs' rights, the Plaintiffs have in the past and will continue to suffer in the future direct and consequential damages, including, but not limited to, the loss of their ability to exercise their constitutional rights.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the declaratory and injunctive relief set forth herein and award such damages to the Plaintiffs as are reasonable, just and necessary.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment as follows:

A. That this Court immediately issue a Preliminary Injunction enjoining the Defendant, Defendant's officers, agents, employees and all other persons acting in concert with them, from acting in any manner so as to obstruct Plaintiff from exercising Plaintiff's constitutional rights and enjoining Defendant, its agents, employees, and all persons in

active concert or participation with them or any of them, from enforcing the District Policy against Plaintiffs so that:

    (1)    On election days, Defendant must allow Plaintiffs access to school grounds in accordance with <u>legal</u> electioneering on public property <u>greater than</u> 100 feet of any building or polling place therein. Polling place defined as the room or area where people vote and building defined as the series of connected rooms adjoining the area where citizens vote.

    (2)    On all days including non-election days Defendant must provide equal treatment to Plaintiff in all respects to the treatment Defendant provides to democrat and/or progressive, liberal, or left-wing organizations that are permitted to have access to campus classrooms and facilities.

    (3)    Defendant is enjoined from enforcing the District Policy in a manner that treats Conservative and Liberal groups unequally;

B.    That this Court issue a Permanent Injunction enjoining the Defendant, Defendant's officers, agents, employees and all other persons acting in concert with them, from acting in any manner so as to obstruct Plaintiff from exercising Plaintiff's constitutional rights and enjoining Defendant, its agents, employees, and all persons in active concert or participation with them or any of them, from enforcing the Policy against Plaintiff so that:

    (1)    On election days, Defendant must allow Plaintiff's access to school grounds in accordance with <u>legal</u> electioneering on public property <u>greater than</u> 100 feet of any building or polling place therein. Polling place defines as the

PLAINTIFF'S ORIGINAL COMPLAINT & REQUEST FOR DECLARATORY JUDGMENT AND DAMAGES
- 17 -

room or area where people vote and building defined as the series of connected rooms adjoining the area where citizens vote.

(2) On all days including non-election days Defendant must provide equal treatment to Plaintiff in all respects to the treatment Defendant provides to democrat and/or progressive, liberal, or left-wing organizations that are permitted to have access to campus classrooms and facilities.

(3) Defendant is enjoined from enforcing the District Policy in a manner that treats Conservative and Liberal groups unequally;

C. That this Court render a Declaratory Judgment declaring the Policy invalid, declaring Defendant's actions toward Plaintiffs unconstitutional, and declaring that Defendant, Defendant's officers, agents, employees, and other persons acting in active concert with them, unlawfully obstructed Plaintiffs from exercising Plaintiffs' constitutionally-protected rights.

D. That this Court award to Plaintiffs damages in the amount of SEVENTEEN THOUSAND, SEVEN HUNDRED AND SIXTY DOLLARS ($17,760) and any other such damages as are reasonable and just under the circumstances as a direct and proximate result of the Defendant's violations of Plaintiff's constitutional rights;

E. That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

F. That this Court retain jurisdiction of this matter for the purpose of enforcing this Court's order;

G.  That this Court award Plaintiffs the reasonable costs and expenses of this action, including attorney's fees, in accordance with 42 U.S.C. §1988;

H.  That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Dated: March 8, 2021

/s/ Jeremy Morris
Jeremy Morris, Esq.
Idaho Bar No. 8500
PO Box 1296
Hayden, ID 83835
Tel: (208) 964-5878
j.morris@libertyconsulting.us

*Attorney for the Plaintiffs*

VERIFCATION

I verify under penalty of perjury that the foregoing is true and correct.

_____  Executed on 3/8/2021
Brent Regan
Chairman
Kootenai County Republican Central Committee

_____  Executed on 3/8/2021
Jeff Tyler
Precinct Committeeman
Kootenai County Republican Central Committee