Jeremy R. Morris
PO Box 1296
Hayden, ID 83835
Tel: (208) 964-5878
j.morris@libertyconsulting.us
Attorney for Plaintiffs,

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| Jeff Tyler, Brigadier Gen. Bob Brooke, Kootenai County Republican Central Committee,<br><br>Plaintiff,<br><br>v.<br><br>Coeur d'Alene School District #271<br><br>Defendant. | Civil No.<br><br>**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY AND PERMANENT INJUNCTION** |

COMES NOW, Plaintiffs, Jeff Tyler, Brigadier Gen. Bob Brooke, and the Kootenai County Republican Central Committee, by and through counsel, Jeremy Morris, pursuant to FRCP 65, respectfully submit this Memorandum in Support of Plaintiffs' Motion for Preliminary and Permanent Injunction against Defendant (hereinafter, "District #271") for <u>openly</u> violating Idaho Code §18-2318, and using §18-2318 as a pretext to engage in Viewpoint Discrimination. Defendants have not only violated the rights of the Plaintiffs, but also undermined the fundamental rights of voters whose right to Equal Protection is under threat.

## **BACKGROUND**

On March 8, 2021, Plaintiffs filed their Original Complaint and Request for Declaratory Judgment and Damages.  Plaintiffs concurrently file their Motion for Preliminary and Permanent Injunction with this Memorandum in Support of that Motion.

Idaho Code §18-2318 plainly states that "no person may, within a polling place, or any building in which an election is being held, or within one hundred (100) feet thereof: (a) Do any electioneering; (b) Circulate cards or handbills of any kind." The restriction on electioneering ENDS 100 feet from the BUILDING that contains the polling place. Elected Republican Precinct Committeemen legally distributing flyers 101 feet from buildings were forcibly ejected from school property by law enforcement at the direction of the Coeur d'Alene School District. One such person was Brigadier Gen. Bob Brooke who was at Hayden Meadows, alone, holding a stack of sample ballots close to the road. Mr. Brooke is one of the Plaintiffs.

Plaintiffs disagree with Defendant that a "polling place" is the entire grounds or property boundary of a school. Plaintiffs request that this Court outline the rights of the parties under Idaho Code §18-2318. The Defendant applied a different definition to §18-2318 in which the required electioneering distance from a polling place was not "100 feet from the building" but rather, 100 feet from the property line." The Defendant argues that as a limited public forum, it controls the school property and therefore prohibits all political speech at all times. The Defendant further seeks to institute a novel definition of "polling place" and not the plain meaning generally understood to be, "the place where a person votes." i.e. Not the football field, the playground, or the work shed where the lawnmower is kept.

**PRELIMINARY STATEMENT**

In *RAV v. City of St. Paul*, the U.S. Supreme Court referred to Justice Holmes's argument that the free speech clause ensures a marketplace of ideas that can compete for acceptance by

citizens seeking the truth. The Court noted that the government may improperly try to use content or viewpoint discrimination to drive certain ideas out of the marketplace. The Government has no authority to "license one side of a debate to fight freestyle, while requiring the other to follow the Marquis of Queensbury Rules." RAV v. City of St. Paul, 505 US 377 (1992). In this case, CDA School District, under the explicit direction of Dean Keck has, it would seem, attempted to use law enforcement to drive certain ideas out of the marketplace.

Plaintiffs request that this Court protect not only the interests of KCRCC and its members, but also the many thousands of voters in Kootenai County; some of whom get sample ballots at some precincts and some who do not. If ever there where a 'verboten' Equal Protection violation, it would be that one sacred right which the United States Supreme Court has declared fundamental: the right to vote.

## **ARGUMENT**

LEGAL STANDARD FOR PRELIMINARY INJUNCTION

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, 555 U.S. 7, 20 (2008). If Plaintiffs show a "likelihood of irreparable injury and that the injunction is in the public interest," a "preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1134–35 (9th Cir. 2011). Plaintiff meets all the prongs of this test and is entitled to preliminary injunctive relief.

**I. There is a substantial likelihood that Plaintiffs will prevail on the merits of their case.**

**A. Plaintiff's speech is a pure expression of viewpoint, and is therefore "protected speech" under the First Amendment of the United States Constitution. The Defendant "opened the forum" when they allowed other political points of view on their campus.**

This Court must apply a strict scrutiny standard to viewpoint discrimination by government officials. The Affidavits attached to this Motion for Injunction incontrovertibly demonstrate the following:

1) The Defendant allowed certain speech on its properties, but not others.
2) The Defendant publicly stated that no political speech of any kind was permitted on school property, but in fact, the Defendant admitted to Jeff Tyler that they actually did allow at least one self-described progressive group to operate a table.
3) A former Board Member is aware of multiple examples of partisan activities by District #271. [see *Seymour Affidavit*].

The District does not have a compelling governmental interest to favor Democrats over Republicans, nor is throwing the Plaintiffs off of school grounds on election day the least restrictive means. Therefore, it is likely the Plaintiffs will prevail on the merits of their case.

**B. The Secretary of State which controls the administration of elections in Idaho has already defined electioneering at a "polling place" under I.C. §18-2318 as 100 feet from the <u>building</u>.**

There is a substantial likelihood the Plaintiffs will win on the merits based upon the long-recognized understanding that a polling place is that actual place you vote and not the football field or some other part of school property. The poll worker who directed Gen. Bob Brooke was following the rulebook created through the Clerk's Office. The Clerks are governed by the Secretary of State and this rulebook appears to be ubiquitous to other counties. According to the training guidebook, "How far away do people need to be from the building if they are electioneering? Electioneering is not allowed within 100 feet of the <u>building</u> where voting is taking place. Check the surroundings of your Polling Place and make sure there are no signs

within that distance.  Be sure to use your electioneering map." Kootenai County Clerk's Poll Worker Training Questions, page 3, Par. 3.  (Exhibit 1).

**II.   An Injunction is appropriate because the relief sought will serve the public interest as the Defendant's harm will extend to voters and homeowners.**

If the Defendants are permitted to continue to deter people from legally exercising their first amendment rights on election day, the obvious result will be that entire neighborhoods would not be permitted to have signs at their homes as many are located within 100 feet of a football field, playground, or school bus.  Hundreds of homeowners would be subjected to a $1,000 fine if this new definition of "polling place" were to stand.

Failing to grant the injunction will also harm voters because voters are entitled to equal protection.  Defendant's Policies and Actions with respect to their disregard for I.C. 18-2318 has already violated the equal protection of voters because voters in some precincts have access to sample ballots, but voters casting a vote at District #271 do not.  In <u>Bush v. Gore</u>, Bush argued that recounts in Florida violated the Equal Protection Clause because Florida did not have a statewide vote recount standard.  <u>Bush v. Gore</u>, 531 U.S. 98 (2000).  Here, some precincts have one standard widely recognized under the verbiage of "100 feet from the <u>building</u>" as written by the Secretary of State, while precincts with polling places operated at District #271 are under a different standard.  Defendants, in violation of the Equal Protection Clause, have caused, and will continue to cause, Plaintiffs to suffer undue and actual hardship and irreparable injury.  Plaintiffs have no adequate remedy at law to correct the continuing deprivations of Plaintiffs' most cherished constitutional liberties.

**III.   Failing to grant a Preliminary Injunction will cause irreparable harm to the Plaintiffs because there are at least two more elections within the next three months.**

If this Court were to wait until the conclusion of this case, the Plaintiffs as well as voters and homeowners subjected to the new definition of "polling place" will face criminal penalties for displaying signs in their yards and in the case of the former, voters will have cast votes with varying levels of application of the law in different precincts.

IV.  **Plaintiffs have a separate, independent right to be free from viewpoint discrimination.**

The First Amendment of the Constitution states that "Congress shall make no law . . . abridging the freedom of speech." U.S. CONST. amend. I.  Indeed, the Supreme Court has recognized that schools play an essential role in the formation of a free and tolerant society: "[t]the vigilant protection of constitutional freedoms is nowhere more vital that in the community of American schools. The classroom is peculiarly the marketplace of ideas." Tinker, 393 U.S. at 512 (citations omitted); Bible Club v. Placentia-Yorba Linda Sch. Dist., 573 F. Supp. 2d 1291 (C.D. Cal. 2008); Monteiro v. Tempe Union High Sch. Dist., 158 F.3d 1022, 1027 n.5 (9th Cir. 1998).  There can be no reasonable dispute that handing out sample ballots is a peaceful, Constitutionally protected speech.  In this case, the Defendant provided knowingly false statements to the public about its policy regarding political speech on campus when it said "no person" is permitted to use school property for political purposes.  The Defendant admitted to the Plaintiffs that this wasn't actually the case.  [see *Tyler Affidavit*].

VI. The threatened injury to Plaintiff outweighs whatever harm the preliminary injunction could cause Defendants.

The only reasonable argument the Defendant can illicit for not allowing this injunction to go forward, at least until this case is fully litigated, is that somehow KCRCC is a security threat on election day.  In having a law enforcement officer cite ANTIFA, a designated terrorist organization, it is possible that the CDA School District #271 has decided that the Republican

MEMORANDUM IN SUPPORT OF MOTION FOR INJUNCTION                                      - 6 -

Party violates I.C. 18-2318 § (d) "engage in any practice which interferes with the freedom of voters to exercise their franchise or disrupts the administration of the polling place." And §3 "[the] sheriff… is hereby authorized to arrest any person violating [these] provisions." In either case, the Republican Party is not a designated terrorist organization, has not violated section (d) of I.C. 18-2318 by interfering with voters, and have carefully positioned themselves to be in compliance of I.C. 18-2318, §1 in exercising First Amendment activities MORE than one hundred (100) feet from any building or polling place; (the room and/or building where voting takes place).

## CONCLUSION

Plaintiffs respectfully request that this Court issue a Temporary Emergency Injunction or at least a Preliminary Injunction while this case is being decided. To fail to do so will harm homeowners who now question whether or not they can display Constitutionally protected political signs. Also, voters have already experienced, and will continue to experience irreparable harm because some voters get sample ballots and other voters do not, depending on whether that voter has the unfortunate luck of living in a precinct that votes on District #271 property.

DATED this 8th day of March 2021.

/s/  JEREMY R. MORRIS
Jeremy Morris, Esq.
PO Box 1296
Hayden, ID 83835
Tel: (208) 964-5878
j.morris@libertyconsulting.us
*Attorney for the Plaintiffs*